Scott A. Kronland, SBN 171693
Andrew Kushner, SBN 316035
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
415-421-7151 (office)
415-362-8064 (facsimile)
skronland@altber.com
akushner@altber.com

James E. Nickels
NICKELS LAW FIRM
P.O. Box 6564
Sherwood, AR  72120
501-833-2424 (office)
501-932-3335 (facsimile)
Jim@NickelsLawFirm.com
*Pro Hac Vice* application to be submitted

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AFGE LOCAL 3584 and COUNCIL OF PRISON LOCALS #33, | Case No. _____ |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| DONALD J. TRUMP, President of the United States of America; JEFF T.H. PON, Director of the Office of Personnel Management; and UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, | |
| Defendants. | |

Complaint

1   Plaintiffs for their complaint against Defendants plead as follows:

2   **<u>INTRODUCTION</u>**

3       1.      This action is brought by Plaintiff Unions for declaratory and injunctive relief with

4   respect to three Executive Orders issued by Defendant President Donald J. Trump on May 25,

5   2018 that seek to interfere with collective bargaining by federal employees: (1) Order No. 13,836,

6   attached as Exhibit 1; (2) Order No. 13,837, attached as Exhibit 2; and (3) Order No. 13,839,

7   attached as Exhibit 3 (collectively referred to as the Executive Orders). Each of the Executive

8   Orders attempts to implement, or direct Defendant the Office of Personnel Management (OPM) to

9   issue, regulations regarding the Federal Service Labor-Management Relations Statute, 5 U.S.C.

10  § 7101, *et seq.,* (the FSLMR Statute), which governs labor relations in the federal civilian

11  workplace and other parts of Title 5 of the United States Code governing the working conditions

12  of federal employees.

13      2.      President Trump lacked constitutional or statutory authority to issue these

14  Executive Orders. To the degree the President has such authority, portions of the Executive

15  Orders are plainly unlawful as they conflict with, or impermissibly seek to rewrite portions of,

16  the FSLMR Statute without authority from Congress. Therefore, the Executive Orders must be

17  declared invalid and a permanent injunction issued to prohibit their implementation.

18      3.      Sections 3, 4(a)(i), 4(a)(ii), 4(a)(iii), and (4)(a)(v) of Executive Order No.

19  13837, Ensuring Transparency, Accountability, and Efficiency in Taxpayer Funded Union

20  Time Use (the Official Time EO) undercut Congress's policy determinations and, if given

21  effect, would impermissibly restrict critical tools, such as official time, in conflict with 5

22  U.S.C. § 7131 and the comprehensive collective bargaining regime provided in Chapter 71 of

23  Title 5.

24      4.      Sections 2, 3, 4(a) and 4(c) of Executive Order No. 13839, Promoting

25  Accountability and Streamlining Removal Procedures Consistent with Merit System Principles

26  (the Removal Procedures EO) likewise encroach upon Congress's authority and, if given effect,

27  would override Congress's determinations concerning the proper scope of a negotiated

28  grievance procedure, as reflected in Chapter 71 of Title 5, federal employees' opportunities to

demonstrate acceptable performance, embodied in 5 U.S.C. § 4302(c), and the adverse action regime contained in Chapter 75 of Title 5.

5.      Section 6 of Executive Order No. 13836, Developing Efficient, Effective, and Cost-Reducing Approaches to Federal Sector Collective Bargaining (the Collective Bargaining EO), would unlawfully prevent agencies from exercising the discretion that Congress explicitly gave them to bargain over the topics described in 5 U.S.C. § 7106(b)(1).

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Plaintiff AFGE Local 3584 is located in this judicial district and its employee members work in this judicial district.

**INTRADISTRICT ASSIGNMENT**

8.      Plaintiff AFGE Local 3584 is an unincorporated association and local union that represents employees in Dublin, California, which is located in Alameda County.  Pursuant to Civil L.R. 3-2(c), this action should be assigned to the San Francisco or Oakland Division.

**PARTIES**

9.      Plaintiff AFGE Local 3584 is an unincorporated association and a local union that represents approximately 200 federal government employees at the Federal Correction Institution in Dublin, California, which is located in the Northern District of California.  Local 3584's members, like the members of the other California locals identified below, are covered by a Master Agreement that is negotiated between Plaintiff Council of Prison Locals #33 and the Federal Bureau of Prisons.

10.     Plaintiff Council of Prison Locals #33 (the Council) is an unincorporated association representing federal employees who work in federal correctional facilities.  Among the local unions that make up the Council are AFGE Local 3584 in Dublin, California, AFGE Local 1242 in Atwater, California, AFGE Local 1808 in Herlong, California, AFGE Local 4397 in Lompoc, California, AFGE 4038 in Los Angeles, California, AFGE Local 1237 in Mendota, California, AFGE Local 3619 in San Diego, California, AFGE Local 1680 in San Pedro,

California, and AFGE Local 3969 in Victorville, California. The Council is the exclusive representative for employees of the federal Bureau of Prisons, and negotiates a Master Agreement that covers all bargaining unit employees of the Bureau of Prisons nationwide. The Council represents approximately 33,000 employees and maintains its headquarters in Forrest City, Arkansas.

11.     Defendant Donald J. Trump is the President of the United States of America. Defendant President Trump issued the executive orders challenged in this complaint, substantial portions of which exceed his authority and are invalid. President Trump is sued in his official capacity only.

12.     Defendant United States Office of Personnel Management is a federal agency headquartered in Washington, D.C. Defendant OPM is charged by Defendant Trump with implementing the Executive Orders subject to this Complaint.

13.     Defendant Jeff T.H. Pon is the Director of OPM. Defendant Pon is named as a party in his official capacity, as he has been tasked with implementing the Executive Orders.

14.     The Official Time EO, at Section 4(c)(i), provides that

The Office of Personnel Management (OPM) shall be responsible for administering the requirements of this section. Within 45 days of the date of this order, the OPM Director shall examine whether existing regulations are consistent with the rules set forth in this section. If the regulations are not, the OPM Director shall propose for notice and public comment, as soon as practicable, appropriate regulations to clarify and assist agencies in implementing these rules, consistent with applicable law. Ex. 2 at 3-4.

15.     Similarly, the Removal Procedures EO, at Section 7(a), provides that

Within 45 days of the date of this order, the OPM Director shall examine whether existing regulations effectuate the principles set forth in section 2 of this order and the requirements of sections 3, 4, 5, and 6 of this order. To the extent necessary or appropriate, the OPM Director shall, as soon as practicable, propose for notice and public comment appropriate regulations to effectuate the principles set forth in section 2 of this order and the requirements of sections 3, 4, 5, and 6 of this order. Ex. 3 at 3-4.

16.     The Collective Bargaining EO, at Section 3, creates a Labor Relations Group and installs Defendant Pon as its chair. As Section 3 goes on to explain, in this role, Defendant Pon will lead the Group's work in, among other things, "[a]nalyzing provisions of term CBAs on

1   subjects of bargaining that have relevance to more than one agency, particular those that may

2   infringe on, or otherwise affect, reserved management rights"; and "[s]haring information and

3   analysis . . . [to] encourage common approaches across agencies, as appropriate."  Ex. 1 at 2.

**FACTS**

**1.       The Statutory Framework.**

5

6          17.      The Civil Service Reform Act (CSRA), enacted in 1978, reformed the civil

7   service of the United States federal government. The CSRA is comprehensive and addressed

8   nearly all aspects of employment with the federal government.

9          18.      Prior to the CSRA, federal employees' right to form a union and bargain

10  collectively was codified via a number of executive orders issued over the course of nearly two

11  decades.  The specific intent of the CSRA was to supplant this patchwork of executive orders.

12         19.      The CSRA also included the Federal Service Labor-Management Relations Statute

13  (FSLMR Statute), which appears in Chapter 71 of the CSRA. The FSLMR Statute reaffirmed the

14  rights of federal employees to form unions and the rights of those unions to bargain collectively

15  over conditions of employment. 5 U.S.C. § 7101(a)(1). In passing Chapter 71 of the CSRA,

16  Congress chose to legislate in an area that previously had been governed by executive authority.

17         20.      By passing the FSLMR Statute, Congress intended to strengthen and promote

18  collective bargaining in the federal sector. The FSLMR Statute was also created as a bulwark

19  against unchecked executive power. During debate, Representative William L. Clay of Missouri,

20  Chairman of the Civil Service Subcommittee, stated that "testimony was overwhelmingly in

21  support of the thrust of the committee's legislation because the existing program was susceptible

22  to the whims of an incumbent President, limited in its scope, management-oriented, and lacking

23  in the opportunity for judicial review of decisions of the Federal Labor Relations Council." 124

24  Cong. Rec. 25613 (1978).

25         21.      Congress specifically found that the existence of labor organizations, like unions,

26  and collective bargaining on behalf of federal employees are in the public interest. 5 U.S.C.

27  § 7101.

28         22.      The FSLMR Statute requires Federal agencies to recognize labor unions as the

1    exclusive bargaining representatives of their employees. 5 U.S.C. § 7114(a)(1).

2         23.    The FSLMR Statute requires all labor unions, including the Plaintiffs, to represent

3    "the interests of all employees in the unit it represents without discrimination and without regard

4    to labor organization membership." 5 U.S.C. § 7114(a)(1).

5         24.    Congress imposed the duty to bargain in good faith on both labor organizations

6    and agencies. 5 U.S.C. § 7114(b). In doing so, it required terms and conditions of employment to

7    be mandatory subjects of collective bargaining. *Id*. § 7103(a)(14).

8         25.    Congress requires "official time" to be provided to federal employees so that they

9    may effectively bargain and administer the collectively-bargained agreements required by the

10   FSLMR Statute. 5 U.S.C. § 7131.

11        26.    Congress also requires labor organizations and agencies to include a negotiated

12   grievance procedure in every collective bargaining agreement that must allow for employees to

13   present their own grievances and for the labor organization to take those grievances to arbitration

14   if unresolved. 5 U.S.C. § 7121.

15        27.    The negotiated grievance procedure is broad in scope, with Congress narrowly

16   exempting only certain specific matters. 5 U.S.C. § 7121(c) provides that the grievance

17   procedure "shall not apply" to: "(1) any claimed violation of subchapter III of chapter 73 of this

18   title (relating prohibited political activities); (2) retirement, life insurance, or health insurance;

19   (3) a suspension or removal under section 7532 of this title; (4) any examination, certification, or

20   appointment; or (5) the classification of any position which does not result in the reduction in

21   grade or pay of an employee."

22        28.    Congress empowered the Federal Labor Relations Authority (FLRA) to "provide

23   leadership in establishing policies and guidance" related to matters under the FSLMR Statute and

24   mad it responsible "for carrying out the purpose" of the FSLMR Statute. 5 U.S.C. § 7105.

25        29.    The responsibilities of the FLRA include determining the scope of bargaining

26   appropriate between federal employees and agencies. 5 U.S.C. § 7105.

27

28

---

5
Complaint

a.      *Official Time.*

30.     Congress established a statutory right for employees to use "official time" for certain representational activities. 5 U.S.C. § 7131.

31.     The FSLMR Statute states that "any employee representing an exclusive representative," or, "in connection with any other matter covered by this chapter, any employee in an appropriate unit represented by an exclusive representative, shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest." 5 U.S.C. § 7131(a).

32.     Congress extended official time to any employee representing the union or by any bargaining unit employee "in connection with any other matter covered by [the Act]." 5 U.S.C. § 7131(d).

33.     Section 7131 defers official time decisions to agencies and labor organizations through the negotiation of collective bargaining agreements.

34.     The delegation of authority by Congress allows labor organizations a "reasonable" amount of time to perform representational duties, so long as it does not relate to the union's "internal business," such as soliciting members, electing union officials, or collecting dues. 5 U.S.C. § 7131(b).

b.      *Removals for Performance Deficiencies.*

35.     The CSRA reformed federal personnel processes by basing actions on an employee's performance through performance appraisal systems.

36.     5 U.S.C. § 4302 directs federal agencies to develop one or more personnel appraisal systems that "(1) provide for periodic appraisals of job performance of employees; (2) encourage employee participation in establishing performance standards; and (3) use the results of performance appraisals as a basis for training, rewarding, reassigning, promoting, reducing in grade, retaining, and removing employees."

37.     Congress further provided that, "[u]nder regulations which the Office of Personnel Management shall prescribe, each performance appraisal system shall provide for . . . reassigning, reducing in grade, or removing employees who continue to have unacceptable

1   performance but only after an opportunity to demonstrate acceptable performance." 5 U.S.C.

2   § 4302(c)(6).

3       38.     5 U.S.C. § 4302(c)(6) establishes an opportunity period for an employee to

4   improve his or her performance, commonly known as a "performance improvement period" or

5   "PIP."

6       39.     Congress chose not to define the length of a PIP, nor is it listed as a reserved

7   management right under the FSLMR Statute.

8       40.     Rather, Congress authorized agencies and labor organizations to bargain over the

9   length of PIPs or how long a bargaining unit employee will have to "demonstrate acceptable

10  performance" before the agency takes actions against an employee for unacceptable

11  performance.

12  **2.     The Executive Orders.**

13      41.     The President's authority to issue an Executive Order "must stem either from an

14  act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343

15  U.S. 579, 585 (1952).

16      42.     An executive order without congressional or constitutional authority is

17  unconstitutional.

18      43.     Congress grants the President authority to issue executive orders pursuant to the

19  FSLMR Statute only in two specific areas. First, the President may exclude an agency or agency

20  subdivision from coverage under the FSLMR Statute if the agency or agency subdivision "has as

21  a primary function intelligence, counterintelligence, investigative, or national security work." 5

22  U.S.C. § 7103(b)(1). Second, the President may issue executive orders suspending provisions of

23  the FSLMR Statute "with respect to any agency, installation, or activity located outside the 50

24  States and the District of Columbia, if the President determines that the suspension is necessary

25  in the interest of national security." *Id.* § 7103(b)(2).

26      44.     Under 5 U.S.C. § 7134, Congress granted to "the [Federal Labor Relations]

27  Authority, the general counsel, the Federal Mediation and Conciliation Service, the Assistant

28  Secretary of Labor for Labor Management Relations, and the [Federal Service Impasses] Panel"

the respective authority to "prescribe rules and regulations to carry out the provisions" of the FSLMR Statute.

### a.        Executive Order 13,836.

45.        Executive Order No. 13,836 is titled "Developing Efficient, Effective, and Cost-Reducing Approaches to Federal Sector Collective Bargaining." 83 FR 25329.

46.        Exec. Order No. 13,836 orders agencies to engage in bad faith bargaining by requiring that every agency "shall . . . propose a new contract, memorandum, or other change in agency policy and implement that proposal if the collective bargaining representative does not offer counter-proposals in a timely manner." Section 5(c)(ii).

47.        This provision of Exec. Order No. 13,836 purports to order agencies to engage in unilateral implementation of bargaining proposals, contrary to good-faith bargaining as required under the FSLMR Statute.

### b.        Executive Order No. 13837.

48.        Executive Order No. 13,837 is titled "Ensuring Transparency, Accountability, and Efficiency in Taxpayer-Funded Union Time Use." 83 FR 25335.

49.        Exec. Order No. 13,837 places additional restrictions on the use of official time under the FSLMR Statute. Such restrictions include limiting the time allowed to be spent on official time as well as how official time can and cannot be used.

50.        Exec. Order No. 13,837 legislates by using terminology not adopted by Congress. Specifically, the terms "taxpayer-funded official time" and "union time rate" found in Sections 2(i) and 2(j) are the President's attempt to amend the definitions in the FSLMR Statute and to create new restrictions not authorized or intended by Congress.

51.        Section 3(a) of Exec. Order No. 13,837 directs agencies to engage in bad faith bargaining by refusing to agree to official time authorizations exceeding one hour per bargaining unit employee and attempts to establish that anything above one hour is presumptively not "reasonable, necessary, and in the public interest" nor furthers the Executive Order's stated goal of an "effective and efficient" federal government.

52.     Section 3(a) of Exec. Order No. 13,837 conflicts with 5 U.S.C. § 7131, which provides that employees be granted official time for representational purposes in amounts agreed to by the agency and exclusive representative.

53.     Section 4(a) of Exec. Order No.13,837 limits the application of official time in certain situations and provides that employees "shall adhere to" certain "requirements."

54.     Section 4(a)(i) prohibits employees from lobbying Congress during paid time, except in their official capacities as employees.

55.     Section 4(a) of Exec. Order No. 13,837 conflicts with 5 U.S.C. § 7131, which allows official time for any activity related to union representation or other related matters covered under the FSLMR Statute.

56.     Section 4(a)(ii)(1) of Exec. Order No. 13,837 directs agencies to prevent bargaining unit employees from spending more than one-quarter of their paid time on official time, and further directs agencies to discount any amounts in excess from the amount available to the employees in the next fiscal year.

57.     Exec. Order No. 13,837 is in conflict with the FSLMR Statute, in that the President is effectively determining what is "reasonable," contrary to Congress's delegation of such determinations to labor organizations and agencies in bargaining.

58.     Section 4(a)(v) of Exec. Order No. 13,837 denies employees the use of official time for preparing or pursuing grievances, including arbitration of grievances brought against an agency except where 1) "such use is otherwise authorized by law or regulation"; 2) an employee uses official time to "present a grievance brought on the employee's own behalf; or to appear as a witness in any grievance proceeding"; or 3) where an employee uses official time to "challenge an adverse personnel action taken against the employee in retaliation for engaging in federally protected whistleblower activity."

59.     Congress, through 5 U.S.C. § 7131, explicitly allows employees acting on behalf of a labor organization to use official time in the above instances wherever provided for by contract between the labor organization and agency.

60.     Exec. Order No. 13,837 prohibits union representatives from providing representation to bargaining unit members and assisting with grievance drafting or proceedings, in direct conflict with 5 U.S.C. § 7131.

61.     Exec. Order No. 13,837 issues instructions directly to employees prohibiting the use of official time above 25 percent of their time. Employees now must fear whether they are putting their jobs in jeopardy by exceeding that amount of official time even where it is legal under the law and the appropriate collective bargaining agreement.

62.     Exec. Order No. 13,837 issues instructions directly prohibiting employees from using official time to "lobby." This effectively prohibits employees from meeting with members of Congress, petitioning members of Congress, and providing information to members of Congress. Employees now must fear whether they are putting their jobs in jeopardy by exceeding the amount of official time even where it is legal under the law and the appropriate collective bargaining agreement.

*c.     Executive Order No, 13,839.*

63.     Executive Order No. 13,839 is titled "Promoting Accountability and Streamlining Removal Procedures Consistent with Merit System Principles." 83 FR 25329.

64.     Congress specifically provided for merit system principles in 5 U.S.C. § 4302(c)(6) and other sections of Title 5.

65.     Exec. Order No. 13,839 effectively bans at least two areas that are mandatory subjects of bargaining under the FSLMR Statute: the implementation and timing of performance improvement periods and the requirements of just cause for disciplinary actions (including progressive discipline) as enumerated in *Douglas v. Veterans Administration*, 5 MSPR 280 (1981) (the "Douglas Factors").

66.     The Douglas Factors are considered a *sine qua non* of federal sector labor agreements.

67.     Through the Douglas Factors, discipline and adverse actions must promote the efficiency of the service, meaning the penalty for proven misconduct may not exceed the bounds of reasonableness.

68.     Section 2(a) of Exec. Order No. 13,839 limits "opportunity periods to demonstrate acceptable performance under section 4302(c)(6) of title 5, United States Code, to the amount of time that provides sufficient opportunity to demonstrate acceptable performance."

69.     Section 3 of Exec. Order No. 13,839 orders agencies "to exclude from the application of any grievance procedures negotiated under section 7121 of Title 5, United States Code, any dispute concerning decisions to remove any employee from Federal service for misconduct or unacceptable performance."

70.     Section 4(a) of Exec. Order No. 13,839 excludes from the grievance procedure "the assignment of ratings of record" and awards "of any form of incentive pay, including cash awards; quality step increases; or recruitment, retention or relocation payments."

71.     Section 4(c) of Exec. Order No. 13,839 directs that "no agency shall . . . generally afford an employee more than a 30-day period to demonstrate acceptable performance under section 4302(c)(6) of title 5, United States Code, except when the agency determines in its sole and exclusive discretion that a longer period is necessary to provide sufficient time to evaluate an employee's performance."

72.     Congress established the requirement of a negotiated grievance procedure set forth in 5 U.S.C. § 7121(a), and further granted authority to labor organizations and agencies to exclude "any matter" from the grievance procedure negotiated among the parties.

73.     5 U.S.C. § 7121(c) provides that the grievance procedure "shall not apply" to: "(1) any claimed violation of subchapter III of chapter 73 of this title (relating prohibited political activities); (2) retirement, life insurance, or health insurance; (3) a suspension or removal under section 7532 of this title; (4) any examination, certification, or appointment; or (5) the classification of any position which does not result in the reduction in grade or pay of an employee." Thus, the aforementioned sections of Exec. Order No. 13,839 do not address the five exclusive matters that Congress expressly excluded from the negotiated grievance procedure.

1          **d.    *Office of Personnel Management***

2          74.    On May 25, 2018, the Office of Personnel Management (OPM) issued a press

3  release regarding the Executive Orders. The press release reflects OPM's intention to implement

4  the Executive Orders.

5          75.    On May 25, 2018, OPM conducted phone calls with media outlets and indicated

6  that the Executive Orders were legally valid and would be implemented.

7          76.    On May 25, 2018, OPM conducted a phone call with interested labor organizations

8  and indicated that the Executive Orders were legally valid and would be implemented.

9          77.    OPM expressed an intent to regulate the area of official time despite no

10  authorization under the law to do so.

11                            **CAUSES OF ACTION**

12                    **Count I: Separation of Powers/*Ultra Vires***

13    **The Executive Orders Improperly Attempt to Legislate in the Area of Labor Relations**

14          78.    The allegations contained in paragraphs 1-77 are repeated and reasserted.

15          79.    This Court has the jurisdiction to grant relief when the President acts beyond the

16  scope of his authority and violates the law to the injury of an individual or organization.

17          80.    "The President's power, if any, to issue [an Executive Order] must stem either from

18  an act of Congress or from the Constitution itself."  *Youngstown Sheet and Tube v. Sawyer*, 343

19  U.S. 579, 585 (1952).  An executive order without such authority is unlawful.  *Id.*

20          81.    Defendant Trump has no constitutional authority to issue the Executive Orders

21  because said orders reach beyond guidance and supervision to subordinates, and affect the rights

22  of third parties, such as the Plaintiff Unions.

23          82.    Defendant Trump's claim of Congressional authority to issue the Executive

24  Orders under 5 U.S.C. § 7301 is invalid. 5 U.S.C. § 7301 merely reads: "The President may

25  prescribe regulations for the conduct of employees in the executive branch."

26          83.    While 5 U.S.C. § 7301 is the source from which prior presidents have issued

27  executive orders pertaining to drug testing the Federal workforce and ethics, relations between

28  federal agencies and the unions who represent federal employees is not "employee conduct."

84.     Congress granted the President authority to issue executive orders pursuant to the FSLMR Statute in only two specific, narrow areas. First, the President may exclude an agency from coverage under the FSLMR Statute if the agency "has as a primary function intelligence, counterintelligence, investigative, or national security work." 5. U.S.C. § 7103(b)(1). Second, the President may issue executive orders suspending provisions of the FSLMR Statute "with respect to any agency, installation, or activity located outside the 50 States and the District of Columbia, if the President determines that the suspension is necessary in the interest of national security." 5 U.S.C. § 7103(b)(2).

85.     The President's authority to issue executive orders under the broad, vague authority of 5 U.S.C. § 7301 is superseded by the specific Congressional enactment of the FSLMR Statute, a comprehensive Statute regulating the relationship between Federal agencies and their employees' labor unions.

86.     Congress specifically gave the FLRA, an independent agency, the express authority to "provide leadership in establishing policies and guidance relating to matters under this chapter, and, except as otherwise provided, shall be responsible for carrying out the purpose of this chapter." 5 U.S.C. § 7105(a)(1).

87.     President Trump may not supplant the FLRA's authority granted by Congress.

88.     The Executive Orders were not issued under the narrow, specific authority granted by Congress to the President under either applicable provision of 5 U.S.C. § 7103(b).

89.     Congress, specifically, did not grant OPM the authority to prescribe rules and regulations to carry out the FSLMR Statute.  *See* 5 U.S.C. § 7135 (granting authority to the FLRA, FMCS, and the Assistant Secretary of Labor for Labor Management Relations, among others).

90.     Therefore, the Executive Orders were issued without legal authority and are *ultra vires*.

91.     Further, OPM has no authority to issue regulations concerning the provisions of the FSLMR Statute.

## Count II: Separation of Powers/*Ultra Vires*

### Executive Order No. 13,837 is an Improper Attempt to Legislate Different Requirements Under U.S.C. § 7131 than Congress Prescribed

92. The allegations contained in paragraphs 1-91 are repeated and reasserted.

93. Sections 2(j) and 3(a) of Exec. Order No. 13,837 unilaterally grant agencies the right to limit the amount of official time given to employees, contrary to Congress's intent to allow the parties to agree upon an amount that is "reasonable" under 5 U.S.C. § 7131.

94. Sections 4(a) of Exec. Order No. 13,837 is contrary to the applicable provisions expressly prescribed by Congress because it impermissibly limits areas that Congress designated as mandatory subjects of bargaining, and further it oversteps the parties' right to arbitrate disagreements over the reasonableness of discipline imposed for misuse of official time under the statutorily-required grievance arbitration procedure.

95. Giving effect to the conflicting requirements set forth in these sections would override Congress's legislative authority.

96. Section 4(a)(i)'s provision preventing employees from engaging in direct lobbying activities during paid time, except in their official capacities as an employee, conflicts with 5 U.S.C. §§ 7102, 7131.

97. Congress broadly defined the use of official time for activities related to union representation or related to any matter covered by the FSLMR Statute, except for those excluded by 5 U.S.C. § 7131(b). Exec. Order No. 13,837 would require agencies to propose to terminate these provisions in Plaintiffs' collective bargaining agreements, to the detriment of employees.

98. Section 4(a)(v) is contrary to 5 U.S.C. § 7131 because it prevents official time use for the preparation and pursuit of grievances, including arbitration of grievances, brought against an agency.

99. The official time limitations set forth in Section 4(a)(ii) directly contradict 5 U.S.C. § 7131, which does not place a yearly limit on the use of official time and vests the labor organization and agency with the authority to determine what is "reasonable" through bargaining.

100.    Via Section 4 of Exec. Order No. 13,837, the President assumes power for himself that Congress intended the FLRA, or the FSIP, to exercise.

**Count III: Separation of Powers/*Ultra Vires***

**Executive Order No. 13,839 is an Improper Attempt to Legislate a Performance System Different than Congress Prescribed**

101.    The allegations contained in paragraphs 1-100 are repeated and reasserted.

102.    Through Exec. Order No. 13,839, the President acted beyond the scope of his authority and violated the law, to the injury of both the Plaintiff Unions and their members. The President does not have the authority to legislate under the Constitution and the actions sought under this Executive Order are a clear attempt to exercise legislative authority vested only in Congress.

103.    Limiting the opportunity period to 30 days under Section 4(c) is contrary to 5 U.S.C. § 4302(c)(6), which does not set a time limit but rather provides that employees are given "an opportunity to demonstrate acceptable performance."

104.    Section 4(c), which unilaterally grants agencies the ability to extend the opportunity period beyond 30 days, is contrary to the duty to bargain in good faith over conditions of employment as defined in 5 U.S.C. § 7106.

105.    Congress left the length of opportunity periods to be substantively negotiable as it is not listed as a management right in 5 U.S.C. § 7106. The President acted outside of his authority in presumptively limiting that period, as Congress delegated the authority to determine the scope of bargaining for opportunity periods to the FLRA.

**Count IV: Separation of Powers/*Ultra Vires***

**The Executive Orders Restrict the Scope of Bargaining Beyond the Limits Set by Congress**

106.    The allegations contained in paragraphs 1-105 are repeated and reasserted.

107.    The Executive Orders restrict labor representatives and managers from agreeing to certain conditions, such as official time limitations, grievable performance awards, permissive topics, and free office space, at any point during the bargaining process.

108.     In Exec. Order No. 13,839, the President seeks to exclude additional matters from the negotiated grievance procedure not contemplated by Congress in 5 U.S.C. § 7121(c). These additional matters were left to labor organizations and agencies to negotiate.

109.     Congress, through the FSLMR Statute, gives labor organizations and agencies the authority to bargain over conditions of employment that do not interfere with reserved management rights found under 5 U.S.C. § 7106. By prohibiting certain conditions of employment not listed in 5 U.S.C. § 7106, the President made those items effectively non-negotiable despite being substantively bargainable under the FSLMR Statute.

110.     Congress did not give the President authority to decide unilaterally which matters will and will not be subject to the negotiated grievance procedure. As such, Defendant Trump is clearly exceeding his authority through the Executive Orders.

**Count V: 5 U.S.C. § 7211**

**The Executive Orders are an Attempt to Interfere with
the Right Contained in 5 U.S.C. § 7211**

111.     The allegations contained in paragraphs 1-110 are repeated and reasserted.

112.     Congress protected "the rights of employees, individually or collectively, to petition Congress or a Member of Congress, or to furnish information to either House of Congress, or to a committee or Member thereof," stating further those rights "may not be interfered with or denied." 5 U.S.C. § 7211.

113.     The wages, benefits and working conditions are established and/or affected by laws adopted by Congress. Therefore, employees, through labor organizations, express viewpoints on wages, benefits, and other working conditions by meeting with and petitioning Congress, as well as providing information to Congress and members of Congress. Through these Executive Orders, the President is interfering with employees' rights under the law.

**Count VI: First Amendment**

**Executive Order No. 13,837 Violates the First Amendment to the U.S. Constitution**

114.     The allegations contained in paragraphs 1-113 are repeated and reasserted.

16
Complaint

115.    Exec. Order No. 13,837 prohibits representatives of a labor organization from using official time to "prepare or pursue grievances (including arbitration of grievances) brought against an agency" pursuant to a collective bargaining agreement, yet provides an exception for employees working on their own behalf.

116.    In treating unions and their representatives differently from individual employees, Section 4(a)(v) of Exec. Order No. 13,837 is in violation of the First Amendment as it encroaches upon Plaintiffs' right to take collective action to pursue interests of their members.

**PRAYER FOR RELIEF**

WHEREFORE, the above-captioned Plaintiffs respectfully request that this Court enter an ORDER:

a.      Declaring that Executive Order Nos. 13,836, 13,837, and 13,839 are unlawful;

b.      Enjoining Defendant President Trump or his subordinates, including Defendants Pon and OPM, from enforcing Executive Order Nos. 13,836, 13,837, and 13,839;

c.      Granting Plaintiffs attorneys' fees and costs;

d.      Granting other necessary and proper relief.


DATED:   June 25, 2018                          Scott A. Kronland
                                                Andrew Kushner
                                                ALTSHULER BERZON LLP

                                                James E. Nickels
                                                NICKELS LAW FIRM

                                                */s/ Scott A. Kronland*
                                                    Scott A. Kronland

                                                *Attorneys for Plaintiffs*